**Donald E. THORNTON, Plaintiff,**

v.

**BLITZ USA, INC., Wal–Mart Stores, Inc., Wal–Mart Stores East, LP, and Wal–Mart Stores East, Inc., Defendants.**

No. CV 509–003.

United States District Court,
S.D. Georgia,
Waycross Division.

March 24, 2011.

---

Daniel Scott Haltiwanger, Kenneth Jacob Wilson, Terry E. Richardson, Jr., Brady Ryan Thomas, Richardson, Patrick, Westbrook & Brickman, LLC, Barnwell, SC, Matthew David Hamrick, Richardson, Patrick, Westbrook & Brickman, LLC, Mt. Pleasant, SC, S. Kirkpatrick Morgan, Jr., William P. Walker, Jr., Walker, Morgan & Kinard, LLC, Lexington, SC, Diane M. Breneman, Breneman & Dungan, Kansas City, MO, for Plaintiff.

James S. Murphy, Garrity, Graham, Murphy, Garofalo & Flinn, PC, Montclair, NJ, Kim M. Jackson, Michael J. Goldman, Warner S. Fox, Hawkins Parnell Thackston & Young, LLP, Atlanta, GA, Douglas Beck, Jennifer Stevenson, Mark C. Hegarty, Scott W. Sayler, Shook, Hardy & Bacon, LLP, Kansas City, MO, for Defendants.

### *ORDER*

LISA GODBEY WOOD, Chief Judge.

Presently before the Court is Plaintiff Donald E. Thornton's Motion for Sanctions and to Strike the Answer of Defendant Blitz USA, Inc. and to Compel Discovery. Upon due consideration, the Motion is **DENIED.**

### BACKGROUND

Plaintiff Donald E. Thornton filed this lawsuit, alleging that Defendant Blitz USA manufactured, and Defendant Wal–Mart Stores sold, a defective portable gas container that was unreasonably dangerous due to the absence of a device called a flame arrester. Dkt. No. 1, Ex. A. Plaintiff now files this motion for sanctions, claiming that Blitz has destroyed and failed to produce relevant documents during discovery. As a result of Blitz's conduct during discovery, Plaintiff argues, the Court should sanction Blitz by striking its answer to the complaint and compelling discovery.

### LEGAL STANDARD

The parties agree that the standard articulated in *Flury v. Daimler Chrysler Corp.,* 427 F.3d 939 (11th Cir.2005), applies to this motion. In that case, the Eleventh Circuit explained that the imposition of sanctions for evidence spoliation depends on

(1) whether the defendant was prejudiced as a result of the destruction of evidence; (2) whether the prejudice could be cured; (3) the practical importance of the evidence; (4) whether the party acted in good or bad faith; and (5) the potential for abuse if expert testimony about the evidence was not excluded.

*Id.* at 945. A finding of bad faith can be based on "direct evidence or on circum-

stantial evidence where certain factors converge." *Atl. Sea Co. v. Anais Worldwide Shipping, Inc.*, No. 08–23079–CIV, 2010 WL 2346665, at *1 (S.D.Fla. June 9, 2010). A court may find bad faith based on circumstantial evidence where:

> (1) evidence once existed that could fairly be supposed to have been material to the proof or defense of a claim at issue in the case; (2) the spoliating party engaged in an affirmative act causing the evidence to be lost; (3) the spoliating party did so while it knew or should have known of its duty to preserve the evidence; (4) the affirmative act causing the loss cannot be credibly explained as not involving bad faith by the reason proffered by the spoliater.

*Id.*

## DISCUSSION

Plaintiff claims that sanctions are justified as a result of: (1) Blitz's failure to implement a litigation hold from 1993 to the fall of 2009; (2) the invocation of the Fifth Amendment on document destruction issues by several Blitz executives; (3) Blitz's destruction of a flame arrester design file; and (4) Blitz's failure to produce emails in response to discovery requests. *See* Dkt. No. 70.

### 1. Litigation Hold

█ Plaintiff claims that Blitz failed to implement a litigation hold and destroyed documents relevant to this litigation until fall 2009. *See id.* at 4. Plaintiff bases his claim on: Larry Chrisco and Thomas Jackson's unfamiliarity with the term "litigation hold;" Jackson's destruction of various documents, including documents associated with Wayne Wire Company; Linda Kerby's testimony that Blitz had no document retention program; and Will Bailey's testimony that Jim Calcogno ordered that all documents not needed for day to day operations be destroyed.

Plaintiff attaches great significance to the fact that Chrisco and Thomas, employees of Blitz, were unfamiliar with the term "litigation hold." *Id.* at 4–5. But Chrisco and Thomas aver that despite their unfamiliarity with that particular term, they understood that "potentially relevant documents needed to be maintained." Dkt. No 74 at 29. Blitz's apparent failure to use the specific term "litigation hold" in itself certainly does not establish that it destroyed or otherwise failed to produce relevant documents.

Plaintiff also points to Jackson's deposition testimony indicating that he and other employees destroyed various accounting documents during the flame arrester litigation. *See* Dkt. No. 70 at 6. Even assuming that accounting documents were, in fact, destroyed, the relevance of such documents is unclear. Plaintiff argues that some of the destroyed accounting documents could have shown that Blitz was working with outside vendors on a flame arrester design and calculating the financial feasibility of installing flame arresters. *Id.* at 7. But Blitz convincingly argues, as explained in more detail below, that such accounting documents never existed because it never seriously considered installing flame arresters in its gas cans. The only specific documents that Plaintiff alleges were improperly destroyed consisted of "accounting type documents from a company called Wayne Wire" that Plaintiff claims "bid new metal screens that fit the criteria for a gas can flame arrester in 2006 at a cost of 3 to 4 cents per arresting screen." *Id.* at 7. But according to Larry Gatewood, the Blitz employee who requested the 2006 Wayne Wire bid, the bid concerned only wire mesh screens used in the manufacture of funnels and "had nothing to do with flame arresters for portable plastic gasoline containers." Dkt. No. 74 at 28; Ex. 23. Plaintiff simply fails to explain how any of the destroyed Wayne

Wire accounting documents—or for that matter, any of the documents Jackson destroyed—could be relevant to this litigation.

Plaintiff's arguments regarding the statements of Linda Kerby, a clerk in Blitz's accounting department, are equally unavailing. Plaintiff cites Kerby's deposition testimony as evidence that Blitz had no document retention policy and that Blitz employees stating that there was such a policy were not providing "truthful testimony." Dkt. No. 70 at 8. Kerby's deposition testimony, however, is ambiguous at best:

Q: Ms. Kerby, have you ever heard of a Blitz document retention policy?

A: No. Not until I came up with one on my own.

Dkt. No. 74, Ex. 14 at 5. In her deposition, Kerby only addressed whether she had "heard of" a document retention policy. Her answer that she had not initially heard of a document retention policy does not establish that one did not previously exist. It does not preclude the possibility that Kerby's policy supplanted an existing policy of which Kerby, as an accounting clerk, had previously been unaware. Moreover, it does not establish that any relevant documents were destroyed in bad faith. Plaintiff's heavy reliance on Kerby's vague answer to this single question thus is misplaced.

Plaintiff additionally notes Kerby's testimony that she oversaw the destruction of certain documents in a Blitz storage facility. But Kerby made clear in her deposition that that the documents destroyed were "old accounting files" that pertained to "Accounts receivables. Bank statements. Bill of ladings. Accounts payable vouchers. Timecards." Dkt. No. 74, Ex. 14 at 4–6. She also clarified that she had no reason to believe any of the destroyed documents were legal files, design documents, or research and development documents. *Id.* at 7–8. In fact, the boxes that contained the documents were identified with labels accurately indicating that the documents consisted only of old accounting files. *Id.*

Plaintiff alleges that Kerby oversaw Blitz's destruction of documents that were not merely old accounting files, citing five documents Blitz produced during discovery. None of these documents, however, indicates any wrongdoing. One of the documents, for example, is a handwritten note stating, "[files] relating to ... threatened or pending litigation—do not destroy—ck w/ attorney." *See* Dkt. No. 70, Ex. E at 4. Another is a file retention schedule that states that litigation records generally need only be retained for seven years but includes the instruction "ck w/ attorney before disposal." *Id.* at 53. Plaintiff fails to explain how these documents are evidence of sanctionable discovery abuses.

Finally, Plaintiff points to Will Bailey's deposition testimony as evidence of Blitz's destruction of relevant documents. Bailey, a former Blitz employee, testified that Jim Calcagno, a Blitz plant manager, "suggested that we keep minimal amounts of e-mail and get rid of things that we don't need unless we're working on that stuff right away" with the understanding that retained documents could end up in court. Dkt. No. 70 at 9. Bailey's testimony, however, is problematic. It does not indicate that any Blitz employee actually deleted any emails, much less e-mails relevant to this lawsuit. Moreover, Bailey's testimony that employees were encouraged to delete emails in order to keep them out of court contradicts the testimony of several employees, including Calcagno himself, who testified that he never directed employees to destroy relevant documents. *See* Dkt. No. 74 at 22.

Bailey also stated that a handful of Blitz executives took shredders into their offices

to dispose of documents while litigation against Blitz was pending. *See* Dkt. No. 70 at 10. Bailey again does not allege that those executives destroyed any relevant documents. Indeed, Miriam George, one of the executives who shredded documents in her office, avers that as director of human resources, she merely disposed of various health benefit forms containing personal employee information, which clearly had nothing to do with this lawsuit. *See* Dkt. No. 74 at 22.

Plaintiff's allegations that Blitz destroyed documents relevant to this lawsuit are unsubstantiated. Time and again, Plaintiff alleges wrongdoing but is unable to produce any convincing evidence in support. As a result, the Court finds that sanctions are inappropriate as to Blitz's alleged failure to implement a litigation hold.

### 2. Invocation of the Fifth Amendment

■ Plaintiff notes that Blitz executives—Rocky Flick, Chrisco, Eric Elmburg, and Cy Elmburg—at one point invoked the Fifth Amendment privilege in response to questions about document destruction. *See* Dkt. No. 70 at 11. Flick and Chrisco, however, withdrew their invocation of the Fifth Amendment privilege before Plaintiff filed this motion for sanctions. *See* Dkt. No. 74 at 34. Additionally, Blitz "offered to schedule the re-deposition of the Elmburgs, on proper, good faith questioning within the scope of the witnesses' invocation" and further offered to "work with opposing counsel on deadlines and methods of minimizing any burden or prejudice caused by any deadlines." *Id.* at 35.

While Plaintiff recounts in detail the executives' invocation of the Fifth Amendment, what relief Plaintiff seeks to address the witnesses' initial invocation of the Fifth Amendment is not clear. In any event, Plaintiff offers no argument or authority indicating that their invocation of the privilege is in itself sanctionable for the purposes of this motion.

### 3. Destruction of Flame Arrester Design File

Despite Blitz's claim that there was no flame arrester project, Plaintiff states that "[i]n what is a devastating blow to Plaintiffs, it appears that the Research and Development file on Blitz's critical 2004–2006 flame arrester project has been destroyed." Dkt. No. 70 at 17. Plaintiff relies on the statements of Mike Dunbar, David Price, and Clint Haynes.

Plaintiff points to the testimony of Dunbar, owner of Dunbar Engineering, as evidence that Blitz undertook a gas can flame arrester project. According to Plaintiff, Dunbar testified that Blitz contacted his engineering firm "regarding a two phase project to research flame arresters and apply them to Blitz gas cans." Dkt. No. 70 at 16. Dunbar also testified, however, that he did little more than provide Blitz with a "summary of a dozen-and-a-half publicly available internet articles." *See* Dkt. No. 74 at 8, Ex. 4 at 4–5. Given the extremely limited scope of Dunbar's work for Blitz regarding gas can flame arresters, Dunbar's testimony does not establish that Blitz had a multi-year gas can flame arrester project that resulted in a research and development file that has subsequently been destroyed.

In addition to Dunbar's testimony, Plaintiff cites evidence that Price, a former Blitz employee, destroyed documents associated with flame arrester research he conducted upon being told that Blitz was no longer pursuing a flame arrester design. *See* Dkt. No. 70 at 17. Price concedes that he conducted some research on flame arresters on the internet. *See* Dkt. No. 70, Ex. 7. He avers, however, that the research consisted only of "print[ing] off

some old patents and couple of articles which [he] found on the internet which mentioned flame arresters." Dkt. No. 70, Ex. 8. Price additionally explained that "[n]one of the articles which [he] printed off related to the use of flame arresters in portable gasoline containers. Instead, such articles referenced in-line flame arresters used in natural gas pipelines." *Id.*

While it is beyond dispute that Price threw away the internet print-offs he collected, Price's conduct does not merit sanction. Plaintiff does not claim that the print-offs, which were taken from publicly available websites, are of any particular significance. Moreover, given that Price has admitted to conducting the research in question and has identified the subject matter of the print-offs, it is highly doubtful that Plaintiff has been prejudiced by the destruction of the documents. Finally, there is no indication whatsoever that Price threw out the print-offs in bad faith: because the documents consisted only of a few internet print-offs, Price could reasonably have believed that he was not under any duty to preserve them for the purposes of this litigation.

Plaintiff also accuses Blitz of destroying a flame arrester design drawing and flame arrester prototypes once in Forbis's possession. Blitz concedes that during a meeting with engineers, Forbis drew a sketch on notebook paper of what he believed was a flame arrester. But upon viewing the drawing, an engineer at the meeting responded that what Forbis sketched would not be effective. Dkt. No. 74, Ex. 7 at 6. While Blitz admits that it has not produced this sketch, Blitz's failure does not give rise to sanctions. Price has described the circumstances surrounding the creation and rejection of the sketch. Given that the sketch was drawn spontaneously on a piece of notebook paper during a meeting with engineers and was immediately rejected, Forbis and Price could reasonably have believed at the time that they were not under any duty to preserve the drawing for subsequent legal proceedings. Because of the absence of evidence indicating bad faith, the failure to produce the sketch does not give rise to sanctions.

As to the allegedly destroyed prototypes, Plaintiff claims that that "it has come to light that Forbis also had flame arrester prototypes sitting on his desk during the flame arrester project." Dkt. 70 at 18. In support, Plaintiff cites paragraph six of Martha Landers's affidavit. *Id.* In her affidavit, Landers, a former Blitz employee, describes various conversations she heard among Blitz employees "regarding the need for flame arresters in Blitz gas cans for consumer safety and the fact that Blitz' Research and Development Department was actively working on a flame arrestor design for the cans." Dkt. No. 70, Ex. 22 at ¶ 6. Landers additionally avers that she "saw a flat mesh screen and a small mesh basket in the Research and Development Department on Charlie Forbis' desk that was being considered as a possible prototype." *Id.*

Blitz allegedly considered these prototypes during the years of 2005 to 2007 when Landers was working as an executive assistant, facility coordinator, and quality assurance specialist. *Id.* It is unclear from her affidavit how Landers (1) identified the mesh products as flame arresters and (2) knew the alleged flame arresters were prototypes for gas can products. Moreover, her affidavit is at odds with the copious evidence Blitz has provided indicating that its gas can flame arrester project consisted of little more than rudimentary research—certainly nothing that would involve prototypes. Regarding the purported prototypes themselves, Forbis avers that he does not recall such prototypes at all, and that to the extent that mesh items were in his office, he claims that they would have been for

Blitz products other than gas cans. *See* Dkt. No. 74 at 15. In light of the evidence contradicting Landers's affidavit, the Court declines to impose a sanction at this time based on her testimony alone.

Finally, Plaintiff presents the affidavit of Clint Haynes, a former Proctor and Gamble employee, that "describe[s] the types of documents one would expect to see in a typical product design file of the duration of the flame arrester design project." Dkt. No. 70 at 18–19. According to Plaintiff, Blitz should be sanctioned because none of these documents that one would have expected to see associated with a design project have been produced. In so arguing, however, Plaintiff unjustifiably assumes that there, in fact, was a flame arrester design project. By arguing that certain documents would have been produced as part of a flame arrester design project, Plaintiff simply ignores the basic fact that he has not shown that a flame arrester project existed at all. As a result, Plaintiff's reliance on Haynes's affidavit is misplaced.

Because Plaintiff has failed to demonstrate the requirements for sanctions as to the alleged gas can flame arrester file, the Court declines to strike Blitz's answer or compel discovery at this time.

*4. Email Destruction and No Good Faith Search of Email*

■ Plaintiff claims that Jody Wood, an employee in Blitz's IT department, testified that "until one year ago ... it was not unusual for Blitz's email server to become overloaded and as a result Blitz's IT department would send out memos asking that employees clear their email boxes without sending out a litigation hold or requesting a litigation review." Dkt. No. 70 at 21. But Plaintiff presents no evidence that any emails, much less relevant ones, were deleted pursuant to these alleged memos.

Plaintiff also complains that Blitz has not produced, or even searched its archive for, a number of significant emails. Blitz concedes that it has not produced all relevant emails but explains that any additional documents "will be produced as part of Blitz U.S.A.'s supplemental document production." Dkt. No. 74 at 19. Blitz further explains that "the first rounds of supplemental production come from hard copy sources" but that "supplemental production efforts also include electronic sources such as email." *Id.* Because Blitz apparently intends to provide all relevant emails in supplemental productions, a sanction based on a failure to produce emails is inappropriate at this time.

**CONCLUSION**

For the reasons stated, Plaintiff's Motion for Sanctions and to Strike the Answer of Defendant Blitz U.S.A., Inc., and to Compel Discovery is **DENIED.**