LOCKEMY, C.J.:
**364 Melinda Cook, as the mother of Jacob N., and Alice Hazel, as guardian ad litem (collectively, Respondents), brought separate actions against Fred's, Inc. to recover for injuries Jacob N. sustained when a portable gasoline container exploded. Fred's moved to permanently enjoin or stay the claims, arguing they were subject to an injunction established during bankruptcy proceedings. The circuit court denied the motion. We affirm.
FACTS
For over two decades, Blitz USA, Inc. manufactured and distributed plastic gasoline containers, at one point becoming the largest producer in the country. Fred's is a Tennessee-based chain store operating in South Carolina and throughout the southeast. In 2005, as part of an agreement to sell Blitz gas cans, Blitz and Fred's entered into a Vendors Hold Harmless and Indemnity Agreement (Indemnity Agreement). The Indemnity Agreement stated that in exchange for the purchase and retail of its merchandise, Blitz would
protect, defend, hold harmless, and indemnify [Fred's] from and against any and all claims ... arising out of any actual or alleged ... death of or injury to any person ... resulting or claimed to result in whole or in part from any actual or alleged defect in [Blitz's] Products.
Additionally, Fred's was a certificate holder on several of Blitz's insurance policies-a commercial general liability (CGL) policy, a products liability policy, and an excess liability policy.
In November 2010, Cook's five-year-old son, Jacob N., was severely burned when a plastic gas container exploded and sprayed him with fuel. The gas can in question was manufactured by Blitz and reportedly purchased from Fred's. In November 2013, Respondents commenced separate lawsuits in Hampton County, both naming Blitz and Fred's as defendants.
**365 [1] The complaints asserted claims against Blitz for products liability, strict liability, and breach of warranty, as well as against Fred's for breach of warranty, *340 strict liability, and negligence. As to Blitz, it was alleged the gas can suffered from a defect that allowed gasoline vapors outside the spout to ignite and mix with the contents of the fuel container, causing a "flashback" explosion. As to Fred's, Respondents claimed Fred's knew of the containers' propensity to explode but continued to sell them in its stores anyway.
Prior to Respondents filing suit, however, Blitz was already facing an onslaught of potential liability from numerous incidents involving its gas cans. Consequently, in November 2011, Blitz filed for Chapter 11 Bankruptcy in the United States Bankruptcy Court for the District of Delaware (the Bankruptcy court). Through its subsequent liquidation and reorganization, Blitz and its insurers sought to settle numerous pending, and possible future, products liability and personal injury claims.
In January 2014, the Bankruptcy court issued an order (the Bankruptcy order) approving Blitz's First Amended Joint Plan of Liquidation (the Plan). The Plan established the Blitz Personal Injury Trust (the Trust), a single pool of assets from which to provide compensation for "Blitz Personal Injury Claims." The Trust ultimately yielded over one hundred-fifty million dollars paid by Wal-Mart-the largest retailer of Blitz cans-and "Participating Insurers" of Blitz. Among the Participating Insurers were the providers of the products liability policy and excess liability policy for which Fred's was a certificate holder.
The Plan defined Blitz Personal Injury Claims as
all claims for damages or other relief for, based upon, arising out of, relating to, or in any way involving bodily injury ... and shall include asserted and unasserted claims, whether known or unknown, based upon, arising out of, or in any way involving the products, premises or operations of [Blitz] ... and without any limitation of the foregoing shall include ... any direct action claims by a claimant against the participating insurers.
**366 According to the terms of the Bankruptcy order, no such claims could be maintained against Blitz or any "Released Parties"; instead, the "the sole and exclusive remedies of Blitz Personal Injury Trust Claims" would be against the Trust. Released Parties included Blitz, "the Participating Insurers, Wal-Mart, and any other person or entity insured under the Subject Policies, including but not limited to (i) any distributor or retailer of [Blitz]'s products." The Plan provided that
[a] Vendor ... sued on a Blitz Personal Injury Claim might be entitled to coverage under the Participating Insurer Policies. If any of the foregoing are insureds under the respective policies, they could tender the Blitz Personal Injury Claims to the Participating Insurers for defense and indemnity. Accordingly, any settlement relating to, and the buy-back of, the Participating Insurer Policies must also resolve all claims against Vendors ... to the same extent such claims are being resolved against [Blitz], which justifies the inclusion of Vendors ... as [Released] Parties under the [ ] Plan.
The Bankruptcy order stated that the release of certain parties from liability was appropriate, "[i]n view of the substantial contribution to the [Trust]," and that Blitz and the Released Parties had "[a]n identity of interests ... such that a claim asserted against a [Released] Party gives rise to a claim against [Blitz] by contract and/or operation of the law of indemnity and/or contribution."
In order to facilitate the settlement of Blitz Personal Injury Claims, the Bankruptcy order imposed a "Channeling Injunction," defined as "an injunction ... that ... (i) permanently enjoins and channels to the [ ] Trust all Blitz Personal Injury Claims, and (ii) permanently enjoins the prosecution of all Blitz Personal Injury Claims against any Released Party." The Bankruptcy order stipulated, however, that the Channeling Injunction "shall not enjoin ... the rights of any Entity to assert any claim, debt, obligation, or liability for payment against a Non-Participating Insurer."
Following the Bankruptcy court's approval of the Plan in early 2014, Respondents filed a claim with the Trust and received $2,872,315 to settle their suit against Blitz. Respondents subsequently amended their complaint to remove *341 all **367 other causes of action except for a general negligence claim against Fred's. On August 26, 2014, Fred's moved to permanently enjoin or alternatively to stay the proceedings, arguing Respondents' claims were Blitz Personal Injury Claims subject to the Channeling Injunction. Additionally, Fred's contended it qualified as a Released Party under the Plan because it was a Vendor insured under a Participating Insurer policy-specifically, Blitz's products liability policy. The circuit court disagreed, finding the Plan did not operate to release and enjoin claims against a Vendor for its own independent negligence and which would be recovered from a Non-Participating Insurer.
Fred's filed a motion to reconsider, arguing the negligence claim was really a products liability claim and was therefore covered under Blitz's products liability policy. Fred's also contended it was entitled to indemnification from Blitz pursuant to the 2005 Indemnity Agreement. The circuit court denied the motion. This appeal followed.
STANDARD OF REVIEW
"The party seeking an injunction has the burden of demonstrating facts and circumstances warranting an injunction." Strategic Res. Co. v. BCS Life Ins. Co. , 367 S.C. 540, 544, 627 S.E.2d 687, 689 (2006). "An order granting or denying an injunction is reviewed for [an] abuse of discretion. An abuse of discretion occurs when the trial court's decision is unsupported by the evidence or controlled by an error of law." Id ."As a general rule, judgments are to be construed like other written instruments. The determinative factor is the intent of the court, as gathered, not from an isolated part thereof, but from all the parts of the judgment itself." Doe v. Bishop of Charleston , 407 S.C. 128, 135, 754 S.E.2d 494, 498 (2014).
LAW ANALYSIS
Initially, Respondents argue Fred's cannot appeal the circuit court's denial of its motion for a permanent injunction because Fred's only appealed the denial of its motion to reconsider. Respondents therefore assert the circuit court's ruling regarding the interpretation of the Bankruptcy order is the "law of the case" and the only issue properly before this court is whether the circuit court correctly ruled the negligence **368 claim differed from a products liability claim. See Shirley's Iron Works, Inc. v. City of Union , 403 S.C. 560, 573, 743 S.E.2d 778, 785 (2013) ("An unappealed ruling is the law of the case and requires affirmance."). Contrary to Respondents' assertion, we believe Fred's motion to reconsider encompassed its objections to the circuit court's original ruling with regard to the motion for a permanent injunction. Accordingly, we decline to construe Fred's appeal of the motion to reconsider as a failure to appeal the circuit court's order denying the motion for an injunction pursuant to the Bankruptcy order.
Turning to the merits of the appeal, Fred's argues the circuit court erred in: (1) finding Respondents' negligence claim was outside the scope of the release and Channeling Injunction, and (2) holding the claim did not trigger the right of indemnification in accordance with the Bankruptcy order and Indemnity Agreement.
I. The Channeling Injunction and Release
Fred's first contends the circuit court erred in finding Respondents' negligence claim was outside the scope of the Channeling Injunction and release. We disagree.
In support of its argument, Fred's directs this court to the definition of Blitz Personal Injury Claims, which encompasses "all claims for damages or other relief for, based upon, arising out of, relating to, or in any way involving bodily injury ... based upon, arising out of, or in any way involving the products, premises or operations of [Blitz]." The crux of Fred's position is that regardless of how Respondents frame their theory of recovery, the underlying claim relates to, and is factually inseparable from, a Blitz product. The implication therefore is that any injury related to a defective product or the conduct of Blitz is a Blitz Personal Injury Claim and falls within the ambit of the Channeling Injunction and release.
The Bankruptcy order is clear, however, that not all personal injury claims are subject to the release and Channeling Injunction;
*342 rather, the release and injunction are only applicable to the extent the Trust has assumed liability for a particular claim. See Doe v. Bishop of Charleston , 407 S.C. at 135, 754 S.E.2d at 498 ("The determinative factor is the intent of the court, as gathered, not from an isolated part thereof, but from **369 all parts of the judgment itself."). As the Bankruptcy court's findings illustrate, the Trust was funded through the buyback of the Participating Insurer polices. In turn, a release from liability was tendered to the Participating Insurers and their policy holders "[i]n view of the substantial contribution to the [Trust]." This also had the effect of channeling claims to the Trust that could have been asserted against those policies. As to Vendors, their liability was discharged "to the same extent such claims are being resolved against [Blitz], which justifie[d] the inclusion of Vendors ... as [Released] Parties under the [ ] Plan." Said another way, a Vendor is protected by the release and injunction only to the extent a claim is covered by a Participating Insurer policy or as to which a Vendor could seek indemnity against Blitz.
It is undisputed that Fred's was a certificate holder on a products liability policy issued by a Participating Insurer; however, Fred's CGL provider was a Non-Participating Insurer under the Plan. The Bankruptcy order dictates that only claims asserted against a Participating Insurer are subject to the Channeling Injunction and release. Furthermore, the Bankruptcy order specifically provides that it "shall not enjoin ... the rights of any [e]ntity to assert any claim, debt, obligation, or liability for payment against a Non-Participating Insurer." Because Fred's CGL provider is a Non-Participating Insurer, the release and injunction do not protect Fred's from claims asserted against that policy.
In their amended complaint, Respondents allege Fred's was negligent for continuing to sell Blitz gas cans after it learned of the cans' propensity to explode. Respondents argue that because the allegations pertain to the general negligence of Fred's, it is covered by Fred's CGL policy, notwithstanding the fact it involves a Blitz product. On the other hand, Fred's maintains this is a products liability claim that naturally falls under the ambit of the products liability policy because the injury was caused by a defect in a Blitz product. Although the parties appear to agree the relevant question is whether Respondents' negligence claim is within the scope of coverage afforded under either the products liability policy or the CGL policy, these policies are not in the record before us. Therefore, any effort to determine the exact coverage afforded under the policies would be a speculative exercise.
**370 Nevertheless, we do not believe this is the type of claim that was intended to be categorically enjoined under the Bankruptcy order. Fred's acknowledges that not all claims relating to a Blitz product would be subject to the injunction as a products liability claim, such as, for example, if Fred's knowingly stocked its shelves with misshapen Blitz gas cans that then fell on the head of an unassuming customer. Similarly, while in a literal sense Respondents' claim relates to a product of Blitz-if not for the gas can exploding, Jacob N. would not have been injured-the claim is directed at the knowledge and conduct of Fred's in its particular dealings with Respondents, not the defective nature of the can. We do not believe the Bankruptcy order intended for a Vendor to be absolved of its own allegedly negligent conduct, even if related to a Blitz product. Because Respondents' claim was asserted against, and only seeks to recover from, a Non-Participating Insurer, we agree with the circuit court that Respondents' negligence claim is outside the scope of the release and Channeling Injunction. See City of Hartsville v. S.C. Mun. Ins. & Risk Fin. Fund , 382 S.C. 535, 543, 677 S.E.2d 574, 578 (2009) ("Questions of coverage and the duty of a liability insurance company to defend a claim brought against its insured are determined by the allegations of the complaint."); Auto Owners Ins. Co. v. Newman , 385 S.C. 187, 197, 684 S.E.2d 541, 546 (2009) ("The standard CGL policy grants the insured broad liability coverage for property damage and bodily injury which is then narrowed by a number of exclusions.").
Moreover, we believe this reading of the Bankruptcy order is consistent with the power of the Bankruptcy court under *343 Chapter 11 "to stay and enjoin proceedings or acts against non-debtors where such actions would interfere with, deplete or adversely affect property of [the debtor's] estate[ ]." In re Johns-Manville Corp. , 26 B.R. 420, 436 (Bankr. S.D.N.Y. 1983), aff'd , 40 B.R. 219 (S.D.N.Y. 1984), appeal allowed, decision vacated in part , 41 B.R. 926 (S.D.N.Y. 1984). While the Bankruptcy court is charged with adjudicating claims against a debtor, and may enjoin claims against non-debtors for the purpose of preserving the debtor's estate, those powers do not operate to limit third party claims against non-debtors that do not affect a debtor's property. See 11 U.S.C. § 105(a) ("The court may issue any order, process, or judgment that is **371 necessary or appropriate to carry out the provisions of this title."); In re Millenium Seacarriers, Inc. , 419 F.3d 83, 92 (2d Cir. 2005) ("Congress has granted the ... courts expansive bankruptcy jurisdiction to adjudicate claims against a debtor's estate."); In re Johns-Manville Corp. , 600 F.3d 135, 146 (2d Cir. 2010) ("[A] bankruptcy court only has jurisdiction to enjoin third-party non-debtor claims that directly affect the res of the bankruptcy estate."); In re Mkt. Square Inn, Inc. , 163 B.R. 64, 66 (Bankr. W.D. Pa. 1994) ("The bankruptcy laws do not operate as a method to relieve a non-debtor from potential liabilities stemming from lawsuits against them."). Here, the Bankruptcy order provides that claims not affecting Blitz or Blitz's estate would not be channeled to the Trust. Fred's, a non-debtor and non-party to the bankruptcy proceeding, acknowledges that any judgment against it would not directly affect Blitz or the Trust. Accordingly, we affirm the circuit court on this issue.
II. Indemnification
Fred's argues the circuit court erred in failing to grant an injunction or stay because Respondents' lawsuit, if successful, exposes Blitz's estate to claims by Fred's for indemnification. Relying on A.H. Robins Co. Inc. v. Piccinin , 788 F.2d 994 (4th Cir. 1986), Fred's argues it has an "identity of interest" with Blitz by virtue of the Indemnity Agreement such that a claim against it will be a claim against Blitz. We disagree.
In A.H. Robins , numerous plaintiffs brought products liability actions in federal and state courts against the manufacturer of an allegedly defective contraceptive device, two of its corporate officers, and its products liability insurer. 788 F.2d at 996. Confronted with these claims, the manufacturer, A.H. Robins, filed a petition under Chapter 11 of the Bankruptcy Code, which automatically stayed all lawsuits against the company. Id . at 998. Thereafter, several plaintiffs sought to sever their actions against A.H. Robins and proceed against the non-debtor codefendants. Id . In response, A.H. Robins moved to enjoin or stay the claims on the basis that any recovery in the separate actions threatened A.H. Robins' bankruptcy estate due to the company's obligation to indemnify the codefendants. Id . at 998-99. The bankruptcy court **372 agreed and granted the stay, and the district court affirmed. Id . at 999.
On appeal to the Fourth Circuit Court of Appeals, plaintiffs argued the bankruptcy court lacked jurisdiction to grant a stay of suits against non-debtor codefendants. Id . But in affirming the district court, the Fourth Circuit noted that while it is atypical for a bankruptcy court to enjoin claims against non-debtor codefendants, the case presented the "unusual situation" in which "there is such identity between the debtor and the third-party defendant[s] that the debtor may be said to be the real party defendant." Id . Specifically, the two corporate officers were entitled to indemnification under the corporate by-laws and statutes of Virginia, the state of incorporation, and were also named as additional insureds under the products liability policy. Id . at 1007. Accordingly, the Fourth Circuit held that because the actions against those codefendants would diminish A.H. Robins' sole remaining asset, its products liability policy, the stay was appropriate. Id . at 1008.
Respondents contend A.H. Robins can be distinguished from the instant case for several reasons. First, the central issue in A.H. Robins was the jurisdictional authority of the Bankruptcy court to enjoin or stay claims against non-debtor codefendants; here, Respondents do not challenge the authority of the Bankruptcy court to issue an injunction, they only seek to determine its applicability. Additionally, the A.H. Robins court noted the *344 "unusual situation" creating the "identity of interests" between a debtor and codefendant does not arise "where the nondebtor's liability rests upon his own breach of duty." Id . at 999. Respondents argue that is the exact situation presented in this case-a claim against Fred's for its own breach of duty.
We agree with Respondents that Fred's has not shown this is the type of "unusual situation" in which Blitz would become the real party defendant. Here, Respondents assert a claim against Fred's based on an alleged independent legal duty and which does not require Blitz to be a necessary party. The Fourth Circuit expressly distinguished circumstances such as this in A.H. Robins : "the situation where the third-party defendant was independently liable as, for example, ...
**373 where the nondebtor's liability rests upon his own breach of duty ... in such a case the automatic stay would clearly not extend to such non debtor." 788 F.2d at 999 (internal quotation marks and citation omitted). Furthermore, this is not a situation where a judgment against Fred's would in effect be a judgment against Blitz. Fred's, unlike the corporate officers of A.H. Robins, is a separate entity to which Blitz has no statutory obligation to indemnify.
Moreover, under South Carolina and Delaware law, a contract of indemnity will not operate to indemnify the indemnitee against losses for its own negligence unless the intention is expressed in "clear and unequivocal terms." See Fed. Pac. Elec. v. Carolina Prod. Enters. , 298 S.C. 23, 26, 378 S.E.2d 56, 57 (Ct. App. 1989) ("[A] contract of indemnity will not be construed to indemnify the indemnitee against losses resulting from its own negligent acts unless such intention is expressed in clear and unequivocal terms."); Am. Ins. Grp. v. Risk Enter. Mgmt., Ltd. , 761 A.2d 826, 829 (Del. 2000) ("While a contract for indemnification may provide for indemnification for the indemnitee's own negligence, that intention must be evidenced by unequivocal language."). In this case, we do not believe there is a clear and unequivocal expression of an intention to indemnify Fred's for its own negligence. To the contrary, the Indemnity Agreement does not mention negligence at all and we cannot otherwise discern an intent to indemnify Fred's for its own wrongdoing, as was alleged here. See Concord & Cumberland Horizontal Prop. Regime v. Concord & Cumberland, LLC , 424 S.C. 639, 657, 819 S.E.2d 166, 176 (Ct. App. 2018), reh'g denied (Oct. 18, 2018) ("Although there is no verbatim phrase that must be used to meet the clear and unequivocal standard, there must be some language in an indemnity clause that clearly shows the parties' intent to absolve the indemnitee of the consequences of its own [ ] negligence.").
Finally, as to the "identity of interests" language included in the Bankruptcy order, we believe it was meant to protect claims against the Trust by those who might seek to recover indirectly through indemnity from a Participating Insurer. Clearly any claims asserted against a party that would then be taken from the Blitz estate support the inclusion of that party in the Plan; however, as discussed above, any judgment **374 against Fred's would not result in funds being taken from the Trust. Accordingly, we find Fred's and Blitz do not have an identity of interests.
CONCLUSION
Based on the foregoing, we find the circuit court properly ruled Respondents' negligence claim was outside the scope of the Bankruptcy order and that Fred's is not otherwise entitled to indemnity from Blitz. Accordingly, the order of the circuit court is
AFFIRMED .
HUFF and HILL, JJ., concur.

The actions have been consolidated on appeal.