# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Alice Hazel, as guardian ad litem for Jacob N., Respondent,

v.

Blitz U.S.A., Inc., Fred's Stores of Tennessee, Inc., Tiger Express Varnville LLC, and James Nix, Defendants,

Of Whom Fred's Stores of Tennessee, Inc. is the Petitioner.

and

Melinda Cook, Respondent,

v.

Blitz U.S.A., Inc., Fred's Stores of Tennessee, Inc., Tiger Express Varnville, LLC, and James Nix, Defendants,

Of Whom Fred's Stores of Tennessee, Inc. is the Petitioner.

Appellate Case No. 2019-000220

———————

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

———————

Appeal from Hampton County
Perry M. Buckner III, Circuit Court Judge

———————

Opinion No. 28016
Heard December 11, 2019 – Filed March 17, 2021

---

**AFFIRMED**

---

Matthew Clark LaFave, Crowe LaFave, LLC, of Columbia, for Petitioner.

Kathleen Chewning Barnes, Barnes Law Firm, LLC; Mark David Ball, Peters Murdaugh Parker Eltzroth & Detrick, PA, both of Hampton, for Respondent.

---

**JUSTICE FEW:** Petitioner Fred's Stores of Tennessee, Inc.[1] contends the circuit court erred by refusing to enjoin these lawsuits under the terms of a bankruptcy court order and injunction entered in the bankruptcy proceedings of Blitz U.S.A., Inc. We find the circuit court correctly determined the bankruptcy court's order and injunction do not protect Fred's from these lawsuits. We remand to the circuit court for discovery and trial.

### I.    Alleged Facts and Procedural History

On November 5, 2010, James Nix poured kerosene from a gasoline can onto a burn pile in his yard. The kerosene ignited, and the flame entered the gas can through its unguarded pour spout. The gas can exploded and sprayed kerosene and fire onto Nix's five-year-old son Jacob, who was standing only a few yards away. Jacob suffered severe burn injuries to over 50% of his skin. Jacob has undergone numerous skin grafts and surgeries, but he continues to suffer from pain and limited range of motion. He has permanent scarring.

Blitz U.S.A., Inc. manufactured the gas can. Blitz gas cans have been involved in numerous other lawsuits involving burn injuries like Jacob's.[2] Blitz sought

---

[1] The caption in the circuit court and court of appeals incorrectly identified the petitioner as Fred's, Inc. The correct name is Fred's Stores of Tennessee, Inc.

[2] *See, e.g.*, *Gomez v. Harbor Freight Tools USA, Inc.*, 383 F. Supp. 3d 1376 (M.D. Ga. 2019); *Thornton v. Blitz USA, Inc.*, 850 F. Supp. 2d 1374 (S.D. Ga. 2011); *Walker v. Blitz USA, Inc.*, 663 F. Supp. 2d 1344 (N.D. Ga. 2009); *Grubbs v. Wal-Mart Stores, Inc.*, Civ. A. No. 1:19-cv-02229-JMC, 2020 WL 3843635 (D.S.C. July

bankruptcy protection in the United States Bankruptcy Court for the District of Delaware. *In re Blitz U.S.A. Inc.*, 475 B.R. 209 (Bankr. D. Del. 2012). According to the bankruptcy court, "Blitz spent millions of dollars to defend numerous product liability lawsuits alleging injuries sustained in the use of Blitz's gas cans. In part, the influx of litigation and rapidly escalating defense costs led Blitz to seek bankruptcy protection." 475 B.R. at 211. Blitz filed the action seeking bankruptcy protection on November 9, 2011. *Id.*

Blitz distributed the gas can involved in Jacob's injury through Fred's, a retail store chain headquartered in Tennessee. Fred's sold the gas can to a consumer at its store in the town of Varnville, in Hampton County, South Carolina. The explosion and fire that burned Jacob occurred at Nix's home in Hampton County.

On November 5, 2013, Jacob's aunt Alice Hazel, who is also his legal guardian, and Jacob's mother Melinda Cook, filed separate but almost identical lawsuits in state court in Hampton County seeking damages for Jacob's injuries. Both plaintiffs asserted claims against Blitz on products liability theories of strict liability, breach of warranty, and negligence. Both plaintiffs asserted claims against Fred's for strict liability and breach of warranty based on the sale of the allegedly defective gas can. Both plaintiffs also asserted a claim against Fred's on a negligence theory based only on Fred's negligence, not based on the negligence of Blitz. This is the claim important to this appeal, and we will refer to it as "Hazel's claim."

Fred's moved to "permanently enjoin or alternatively stay" the two lawsuits. Fred's claimed the Blitz bankruptcy order and injunction foreclosed any claims against third-party sellers like Fred's. Before the initial hearing on Fred's motion, the plaintiffs asked for—and the court granted—permission to amend the complaints to withdraw any claims based on Blitz's conduct, and to allege against Fred's only Hazel's claim. The circuit court later filed a written order granting leave to amend the complaints, and denying Fred's motion to enjoin Hazel's claim. Fred's appealed the denial of the injunction to the court of appeals, which affirmed. *Hazel v. Blitz*

---

8, 2020). Our Westlaw search of "Blitz" and "gas can" or "gas container" found an additional eighteen lawsuits relating to Blitz's gas cans. *See, e.g.*, *Boldman v. Walmart Stores, Inc.*, 754 F. App'x 148 (3d Cir. 2018); *Smith ex rel. VanBrunt v. Blitz U.S.A. Inc.*, Civ. No. 11-1771 (RHK/LIB), 2012 WL 5413513 (D. Minn. Nov. 6, 2012); *Purvis v. Blitz, U.S.A., Inc.*, No. 7:11-cv-111 (HL), 2012 WL 645884 (M.D. Ga. Feb. 28, 2012).

*U.S.A., Inc.*, 425 S.C. 361, 822 S.E.2d 338 (Ct. App. 2018). We granted Fred's petition for a writ of certiorari.

## II.    Analysis

Fred's motion to enjoin Hazel's claim, and its argument to this Court that the circuit court erred by denying it, is based on a 53-page order entered on January 30, 2014—with hundreds of pages of attachments—in the Blitz bankruptcy proceedings in Delaware. The text of the order—without attachments—may be found at *In re Blitz U.S.A., Inc.*, No. 11-13603 (PJW), 2014 WL 2582976 (Bankr. D. Del. Jan. 30, 2014). The attachment important to our analysis—the "Debtors' and Official Committee of Unsecured Creditors' First Amended Joint Plan of Liquidation"—may be found at *In re BLITZ U.S.A., INC., et al., Debtors.*, No. 11-13603 (PJW), 2013 WL 6825608 (Bankr. D. Del. Dec. 19, 2013). As the parties have done, we will refer to these documents as the "Confirmation Order" and the "Plan."

### A.    Summary of Confirmation Order and Plan

The United States Bankruptcy Code provides an "automatic stay" that prevents "the commencement or continuation" of most civil litigation against any debtor named in a bankruptcy proceeding. 11 U.S.C.A. § 362(a)(1) (2015). Fred's is not a named debtor in the Blitz bankruptcy proceeding. However, the Confirmation Order and Plan also enjoin civil actions against certain other parties who are not named as debtors. To accomplish this, the Confirmation Order permitted Wal-Mart Stores, Inc.[3] and willing insurance companies to fund the Blitz Personal Injury Trust. In exchange for their contributions, the Confirmation Order protected Wal-Mart and the insurance companies who contributed to the Trust—the Participating Insurers—from all liability "based upon, arising out of, relating to, or in any way involving bodily injury and/or property damage" from a Blitz product. Under the operative

---

[3] Wal-Mart appears to have sold a lot of Blitz gas cans and defended a lot of Blitz Personal Injury Trust Claims. According to one plaintiff in a Blitz Personal Injury Trust Claim, "Wal-Mart, the country's largest seller of plastic gas containers, 'sold more than 40 million Blitz gas containers without flame arrestors between 2002 and 2013.'" *Jackson v. Wal-Mart Stores, Inc.*, 753 F. App'x 866, 868 (11th Cir. 2018) (quoting the plaintiff's complaint). According to another court, "Wal-Mart has been named along with Blitz in at least thirty-five actions involving portable consumer gas containers in multiple jurisdictions." *Al-Shara v. Wal-Mart Stores, Inc.*, No. 11-CV-14954, 2012 WL 1119339, at *2 (E.D. Mich. Apr. 3, 2012).

language of the Confirmation Order and Plan,[4] claims against Blitz, Wal-Mart, Participating Insurers, and Protected Parties are "channeled" into the Blitz Personal Injury Trust, and any party asserting such a claim is enjoined from pursuing the claim in any other forum.

### B. Fred's Primary Argument

Fred's argues it is a Protected Party under the operative language of the Confirmation Order and Plan. Thus, Fred's argues, Hazel's claim must be channeled to the Blitz Personal Injury Trust and may not be litigated in state court.[5] The operative language of the Confirmation Order and Plan supports Fred's argument in some passages, but refutes the argument in other passages. We begin our discussion of Fred's primary argument by explaining the supporting language, then the contrary language. We will finish by attempting to reconcile the inconsistency to discern the bankruptcy court's intent.

The "Introduction" to the Plan summarizes the operative language, "Following the issuance of the Channeling Injunction, holders of Blitz Personal Injury Trust Claims will be permanently enjoined from seeking satisfaction of their Blitz Personal Injury Trust Claims against the Debtors or any other Protected Party." The definition of Blitz Personal Injury Trust Claim is extremely broad. The definition includes, "All claims for damages or other relief for, based upon, arising out of, relating to or in

---

[4] The operative language uses numerous defined terms, not all of which are clear, and several of which are defined inconsistently in different places. We have capitalized all defined terms. Exhibit 1 to the Plan—entitled "Definitions"— includes 153 defined terms; Exhibit 8—entitled "Term Sheet"—includes twenty-nine defined terms. Twelve of the terms are defined in both documents. Of those twelve, only three are given the same definition both times.

[5] Much of the parties' briefs and oral argument focused on whether Hazel's claim is a "products liability" claim. Neither the Confirmation Order nor the Plan mention the phrase "products liability." As we will explain below, the debate over whether Hazel's claim is a products liability claim does not relate to the operative language of the Confirmation Order or Plan, but relates to Fred's secondary argument that Hazel's claim invokes insurance coverage through a policy issued by Old Republic Insurance Company insuring Fred's for products liability claims. Fred's contends Hazel's claim must be paid by Old Republic—a Participating Insurer—and thus Hazel's claim is barred.

any way involving the products . . . of the Debtors." This definition includes Hazel's claim. The term Protected Party is defined to include Vendors. The term Vendor is defined as "any Entity that . . . sold or distributed any product manufactured . . . by the Debtors." Fred's argues it is a Protected Party because it is a Vendor. Thus, Fred's argues, the Confirmation Order and Plan bar Hazel's claim because Fred's is a Protected Party.

The operative language itself also provides support for Fred's argument. The paragraph of the Confirmation Order entitled "Imposition of Channeling Injunction" provides, "Entities that . . . assert any Blitz Personal Injury Trust Claim against the Protected Parties . . . shall be permanently stayed, restrained and enjoined . . . ." The operative language of the Plan is found in sections 3.3.4 and 3.4.4. The third sentence of both sections provides "each holder of a Blitz Personal Injury Trust Claim shall have its Claim permanently channeled to the Blitz Injury Trust, and such [a] Claim may thereafter be asserted exclusively against the Blitz Personal Injury Trust."

The Channeling Injunction itself is section 4.3.3 of the Plan. That section includes two subsections, one of which provides "(i) all Blitz Personal Injury Trust Claims will be subject to the Channeling Injunction," and the other of which provides "(ii) the Protected Parties shall have no obligation to pay any liability of any nature or description arising out of, relating to, or in connection with any Blitz Personal Injury Trust Claims." Section 4.3.3.1 contains the "Terms" of the Channeling Injunction. That section provides, "all Entities . . . that hold or assert any Blitz Personal Injury Trust Claim against the Protected Parties . . . shall be permanently . . . enjoined from taking any action for the purpose of . . . recovery from any such Protected Party with respect to any such Blitz Personal Injury Trust Claim."

Fred's relies on these provisions to support its argument that Hazel's claim is channeled into the Blitz Personal Injury Trust and may be asserted only against the Trust.

There are other provisions of the Confirmation Order and Plan, however, which refute Fred's argument. First, several of the provisions quoted above that Fred's argues support its argument are inconsistent with each other. For example, the headings and first two sentences of sections 3.3.4 and 3.4.4 indicate the sections apply only to USA Debtors and BAH Debtors respectively, while later sentences indicate the sections apply to all Protected Parties. As another example, sections 3.3.4, 3.4.4, and 4.3.3 of the Plan provide that "each" or "all" Blitz Personal Injury Trust Claims must be channeled to the Blitz Personal Injury Trust. On the other

hand, the "Introduction" to the Plan, other sentences of sections 3.3.4 and 3.4.4, and the "Terms" set forth in section 4.3.3.1 provide only that claims "against the Protected Parties" are prohibited. In the first example, the part of the text applicable to Debtors clearly does not apply to Fred's, but the part applicable to Protected Parties arguably applies. In the second example, the part applicable to Protected Parties limits the application of the operative language and Channeling Injunction, but the extremely broad definition of Blitz Personal Injury Trust Claim makes the "each" or "all" part of the operative language and Channeling Injunction applicable to claims to which the provisions were clearly not intended to apply.

To explain this last point, it is conceivable that some person who knew of the danger of fire entering the gas can through its unguarded spout might nevertheless pour kerosene onto a burn pile in the presence of others to whom he owes a duty of due care. If the same type of explosion and fire that burned Jacob then occurred and injured others nearby, the hypothetical claim accruing to any injured parties against the person who poured the kerosene would be a Blitz Personal Injury Trust Claim. The plaintiffs actually asserted this very claim against Nix in this case. It is inconceivable the bankruptcy court meant to enjoin a claim against such a person, or against Nix, even though both the hypothetical claim and the actual claim against Nix are Blitz Personal Injury Trust Claims. Yet, the "each" or "all" part of sections 3.3.4, 3.4.4, and 4.3.3—which foreclose "each" or "all" Blitz Personal Injury Trust Claims—purport to prevent a claim against the person who negligently poured the kerosene on the fire.

Second, the term Channeling Injunction is defined in inconsistent ways. In Exhibit 1, Channeling Injunction is defined by simply referring the reader to section 4.3.3 of the Plan, which we discussed above. In Exhibit 8—Term Sheet—the definition is substantive: "'Channeling Injunction' shall mean an injunction pursuant to Sections 105(a) and 363(f) of the Bankruptcy Code that to the fullest extent permitted by law[6] . . . permanently enjoins the prosecution of all Blitz Personal Injury Claims against any Released Party." The language we discussed in support of the argument Fred's raises applies to Protected Parties, not Released Parties, and those terms are defined differently. Fred's meets the definition of Vendor, and thus—arguably—is a Protected Party; Fred's is not a Released Party.

---

[6] We discuss below the extent to which the law permits the bankruptcy court to impose an injunction in favor of a third-party, non-debtor like Fred's.

The last statement warrants an explanation. The Term Sheet defines Released Party as "the Debtors, the Participating Insurers, Wal-Mart and any other person or entity insured under the Subject Policies . . . ."[7] Exhibit 2 to the Term Sheet contains a list of the "Subject Policies." Blitz had three liability insurance policies naming Fred's as an insured. Burlington Insurance Company issued a commercial general liability policy. Old Republic Insurance Company issued what the parties call a products liability policy. A third insurer—First Specialty Insurance Corporation—issued an excess liability policy. The list of Subject Policies includes both the products liability policy and the excess liability policy, but it does not include the commercial general liability policy. The commercial general liability policy would likely cover a negligence claim against Fred's, such as Hazel's claim. However, none of the policies are in the Appendix or in the Record on Appeal. Thus, the record before us does not indicate whether the products liability policy or the excess liability policy would cover Hazel's claim.[8] Because Fred's has not demonstrated it is an insured under a Subject Policy, Fred's is not a Released Party. Under the substantive definition of Channeling Injunction the bankruptcy court included on the Term Sheet, Hazel's claim is not enjoined.

Third, and perhaps most importantly, there are multiple indications in the Confirmation Order and Plan that the bankruptcy court did not intend the term "Vendor" to include a seller—like Fred's—that did not contribute funds to the Blitz Personal Injury Trust. Throughout the Confirmation Order and Plan, the bankruptcy court indicated the Protected Parties were released from liability *in exchange* for the contributions the Participating Insurers made to the Blitz Personal Injury Trust. For example, the Confirmation Order and Plan state the documents enjoin cases against Protected Parties, "In view of the substantial contributions to the Blitz Personal Injury Trust . . . made by or on behalf of the Protected Parties," and, "For good and

---

[7] The sentence continues with the language ". . . including, but not limited to (i) any distributor or retailer of Debtors' products . . . ." This language does not make "any distributor or retailer" a Released Party, but includes as a Released Party distributors or retailers that are "insured under the Subject Policies."

[8] As the court of appeals stated, "these policies are not in the record before us," and therefore, "any effort to determine the exact coverage afforded under the policies would be a speculative exercise." *Hazel*, 425 S.C. at 369, 822 S.E.2d at 342. Fred's—as the party who filed the motion to enjoin these lawsuits, the appellant at the court of appeals, and the petitioner here—bears the burden of demonstrating the insurance policies apply to Hazel's claim.

valuable consideration . . . ." In other words, the bankruptcy court appears to have intended to restrict the definition of Protected Party to those who made financial contributions to the Blitz Personal Injury Trust. These include Wal-Mart and sellers insured by Participating Insurers. As evidence of this intent, the bankruptcy court stated, "The Channeling Injunction and Releases, as applied to Blitz Personal Injury Trust Claims against the Protected Parties, are essential and necessary for the Debtors because . . . the Protected Parties would not be willing to make their contributions to the Blitz Personal Injury Trust . . . without the protection provided by the Channeling Injunction and Releases."

In addition, the bankruptcy court stated,

> If Wal-Mart or any Participating Insurer defaults and does not pay its agreed upon share of the Insurance Settlement Payment . . . in accordance with the terms of the Insurance Settlement, that defaulting party shall, after ten days notice and an opportunity to cure, not receive any benefits provided by the Insurance Settlement, including but not limited to the Releases, Injunctions and Insurance Policy Buy-Back until such time as the defaulting party makes full payment.

If the bankruptcy court refused to provide protection to entities who failed to make their agreed upon contributions to the Blitz Personal Injury Trust, it is inconceivable the court intended to protect entities like Fred's who refused to make contributions to the Trust in the first place.

Finally as to the bankruptcy court's intent to release non-debtors only *in exchange* for contributions to the Blitz Personal Injury Trust, the bankruptcy court indicated claims insured by Non-Participating Insurers were not intended to be released from liability. The exceptions to the releases state, "[T]he Channeling Injunction shall not enjoin: . . . the rights of any Entity to assert any claim, debt, obligation or liability for payment against a Non-Participating Insurer." The bankruptcy court found, "The Plan does not materially increase any Non-Participating Insurer's risk of providing coverage for any Blitz Personal Injury Trust Claims . . . ." The bankruptcy court stated, "The Plan shall not, and is not intended to, modify any of the rights or obligations of Non-Participating Insurers . . . ." These provisions clearly permit Hazel's claim at least to the extent Fred's is insured by Burlington—a Non-Participating Insurer—or is self-insured.

This language releasing Protected Parties *in exchange* for payments made to the Blitz Personal Injury Trust, and the language excluding Non-Participating Insurers from the release, refutes Fred's argument that Hazel's claim against it was subject to the Channeling Injunction and Fred's was therefore released from liability.

As an additional effort to discern whether the bankruptcy court intended to include Fred's as a Protected Party under the operative language of the Confirmation Order and Plan, we consider the scope of the bankruptcy court's power to protect non-debtors, for surely the bankruptcy court in this case did not intend to exceed its power. The bankruptcy court specifically stated in its definition of Channeling Injunction on the Term Sheet the Channeling Injunction extends "to the fullest extent permitted by law." The court of appeals also considered the extent of the bankruptcy court's power as an indication of its intent, stating "we believe this reading of the Bankruptcy order is consistent with the power of the Bankruptcy court under Chapter 11 'to stay and enjoin proceedings or acts against non-debtors where such actions would interfere with, deplete or adversely affect property of [the debtor's] estate[ ].'" *Hazel*, 425 S.C. at 370, 822 S.E.2d at 342-43 (alterations by court of appeals) (quoting *In re Johns-Manville Corp.*, 26 B.R. 420, 436 (Bankr. S.D.N.Y. 1983), *aff'd*, 40 B.R. 219 (S.D.N.Y. 1984), *appeal allowed, decision rev'd in part*, 41 B.R. 926 (S.D.N.Y. 1984)); *see generally Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 155, 129 S. Ct. 2195, 2207, 174 L. Ed. 2d 99, 112 (2009) (stating— as to future cases involving asbestos—"a channeling injunction . . . would have to be measured against the requirements of [11 U.S.C.A.] § 524," in which "Congress explicitly authorized bankruptcy courts, in some circumstances, to enjoin actions against a nondebtor"); 557 U.S. at 160-61, 129 S. Ct. at 2210, 174 L. Ed. 2d at 115 (Stevens, J., dissenting) (arguing the majority's statement as to future cases should be applied in the current case, and stating, "We should not lightly assume that the Bankruptcy Court entered an order that exceeded its authority. . . . A bankruptcy court has no authority . . . to adjudicate, settle, or enjoin claims against nondebtors that do not affect the debtor's estate.").

Under the Bankruptcy Code, bankruptcy courts have broad power to reorganize or distribute the estate of a named debtor. *See Braunstein v. McCabe*, 571 F.3d 108, 120 (1st Cir. 2009) (stating bankruptcy courts have a "broad range of powers . . . 'in passing on a wide range of problems arising out of the administration of bankrupt estates'" (quoting *Pepper v. Litton*, 308 U.S. 295, 304-05, 60 S. Ct. 238, 244, 84 L. Ed. 281, 288 (1939))). The power to enjoin claims against entities that are not named as debtors, however, is not so broad. As the bankruptcy court clearly recognized in this case, there must be a nexus to protecting the estate of the bankrupt debtor before the court may enjoin claims against a third-party, non-debtor. As to

what that nexus must be, "There is a long-running circuit split on this issue." *Blixseth v. Credit Suisse*, 961 F.3d 1074, 1082 n.4 (9th Cir. 2020). The Fourth Circuit takes an expansive approach. *See A.H. Robins Company v. Piccinin*, 788 F.2d 994, 998-1004 (4th Cir. 1986) (discussing the four categories of non-debtors a bankruptcy court may protect).[9] Several other circuits take a restrictive approach, prohibiting almost any injunction in favor of a non-debtor except by consent of the creditor. *See, e.g.*, *Blixseth*, 961 F.3d at 1083 (Ninth Circuit stating "[t]his court has repeatedly held, without exception, that § 524(e) precludes bankruptcy courts from discharging the liabilities of non-debtors" (quoting *In re Lowenschuss*, 67 F.3d 1394, 1401 (9th Cir. 1995))).

The Third Circuit—comprising the District of Delaware—has taken a cautious approach. In *In re Continental Airlines*, 203 F.3d 203 (3d Cir. 2000), the court analyzed the split in the circuits, 203 F.3d at 212-13, and then concluded "we need not establish our own rule regarding the conditions under which non-debtor releases and permanent injunctions are appropriate or permissible." 203 F.3d at 214. The Third Circuit revisited the issue in *In re Millennium Lab Holdings II, LLC.*, 945 F.3d 126 (3d Cir. 2019). "We are asked," the Third Circuit stated, "whether the Bankruptcy Court . . . can confirm a Chapter 11 reorganization plan containing nonconsensual third-party releases and injunctions." 945 F.3d at 129. Without deciding the full scope of the bankruptcy court's power to protect a non-debtor by imposing an injunction in a plan of reorganization, the court focused on the question of what nexus is sufficient to justify the court's exercise of this power. The court permitted the specific injunction at issue in that case because "the Bankruptcy Court was resolving a matter *integral* to the restructuring of the debtor-creditor relationship." 945 F.3d at 137 (emphasis added). The court relied on the $325 million contribution made by the released third parties and found the nexus sufficient, stating "the deal to avoid corporate destruction would not have been possible without the third-party releases." 945 F.3d at 132.

In this case, the bankruptcy court carefully analyzed the nexus between the debtor's estate and the third parties it intended to protect through the Channeling Injunction. The bankruptcy court stated, "The Releases and the Channeling Injunction are critical to the success of the Plan. Without the Releases and the Channeling Injunction, the Protected Parties are not willing to make their contributions under the Plan." We do not doubt this is true. As the bankruptcy court earlier recognized,

---

[9] *But see Behrmann v. Nat'l Heritage Found.*, 663 F.3d 704, 712 (4th Cir. 2011) (stating "approval of nondebtor releases . . . should be granted cautiously and infrequently").

Blitz faced tremendous liability because of its defective gas cans, 475 B.R. at 211, and the Participating Parties—such as Wal-Mart—and the Participating Insurers would have no incentive to contribute to the bankruptcy estate unless they received a benefit such as a release from liability. However, a third-party, non-debtor seller like Fred's—who made no contribution to the bankruptcy estate and did not even participate in any negotiations or litigation in bankruptcy court—has no nexus to the success of the bankruptcy proceedings. Protecting Fred's bears no relationship to the "integral" connection the Third Circuit approved in *Millennium Lab Holdings II*, nor even to the expansive construction given by the Fourth Circuit. Importantly, neither Fred's nor any other similarly situated seller of Blitz products is even mentioned by the bankruptcy court in the Confirmation Order or the Plan.

Nevertheless, Fred's makes two arguments that it has a sufficient nexus to the bankruptcy proceedings to give the bankruptcy court the power to protect it. The first is Fred's secondary argument about products liability insurance, which we address in Section II.C. The second is indemnity. An indemnity agreement *could* create a sufficient nexus with the debtor such that the Confirmation Order and Plan would extend to a third-party, non-debtor seller like Fred's. *See A.H. Robins Company*, 788 F.2d at 999 (hypothesizing that "a third-party who is entitled to *absolute* indemnity by the debtor" would have a sufficient nexus) (emphasis added). Blitz and Fred's entered into a "Vendor's Hold Harmless and Indemnity Agreement." Blitz agreed,

> To protect, defend, hold harmless and indemnify [Fred's]
> from and against any and all claims, actions, liabilities,
> losses, . . . arising out of any actual or alleged death of or
> injury to any person, . . . resulting or claimed to result in
> whole or in part from any actual or alleged defect in said
> Products . . . .

Under South Carolina law, however, Blitz's indemnity obligation is not absolute. A right of contractual indemnity will not be enforced if the indemnitee's own negligence caused the loss, unless the agreement expressly provides otherwise. *Laurens Emergency Med. Specialists, PA v. M.S. Bailey & Sons Bankers*, 355 S.C. 104, 111, 584 S.E.2d 375, 379 (2003). The very nature of any indemnity agreement is that it requires the indemnitor (Blitz) to pay the indemnitee (Fred's) when the indemnitee becomes liable to pay a claim covered by the indemnity agreement. That claim in this case is Hazel's claim. Hazel's claim alleges only Fred's was negligent. Therefore, Fred's becomes liable to pay Hazel's claim only if a jury finds Fred's was negligent. The indemnity agreement between Blitz and Fred's does not provide that

Blitz must indemnify Fred's for Fred's own negligence. If Fred's was negligent—under *Laurens Emergency Medical Specialists*—then Blitz cannot be liable to Fred's under the indemnity agreement. In other words, the validity of Hazel's claim depends on a finding that Fred's was negligent, and such a finding—by law—forecloses Blitz's indemnity obligation. Therefore, there can never be any indemnity from Blitz to Fred's on Hazel's claim, and the indemnity obligation will never provide a sufficient nexus to the bankruptcy proceedings.

In conclusion as to the operative language, the Confirmation Order and the Plan are inconsistent as to whether the bankruptcy court intended to enjoin third-party sellers like Fred's. We considered this inconsistency in light of the bankruptcy court's power. The bankruptcy court made a careful effort to act only within its power by considering whether any third parties who might be protected met the legally required nexus to preserving the bankruptcy estate before enjoining claims against such a third party. We find the bankruptcy court did not intend to define Protected Party so broadly as to prohibit claims like Hazel's claim against a seller like Fred's who did not participate in the bankruptcy proceedings and who made no contribution to the bankruptcy estate.

### C.    Fred's Secondary Argument

Fred's also argues Hazel's claim must be enjoined because it is a "products liability" claim. We begin our discussion of this argument by repeating that the phrase "products liability" is not found in the Confirmation Order or the Plan. *See supra* note 5. Whether a claim is a products liability claim, therefore, was not part of the bankruptcy court's analysis. Fred's argument that Hazel's claim is a products liability claim relates to a different point: whether Hazel's claim is insured by Old Republic Insurance Company, which is a Participating Insurer. If so, Fred's argues, Hazel's claim is a Blitz Personal Injury Trust Claim against a Protected Party, and thus must be enjoined.

As discussed above, however, the Old Republic policy is not in the Appendix and was not in the Record on Appeal. It is not possible, therefore, for us to determine if Fred's is covered by the Old Republic policy as to Hazel's claim. The simple fact Hazel's claim is—or is not—a products liability claim does not answer this question.[10]

---

[10] We do not argue, as the dissent suggests, "that the Old Republic Insurance Company policy" provides no coverage for Hazel's claim "because the parties call it

To support its argument, Fred's relies heavily on *Bragg v. Hi-Ranger, Inc.*, 319 S.C. 531, 462 S.E.2d 321 (Ct. App. 1995). Fred's pieces together random statements from *Bragg* to fit its argument that the only negligence claim available to these plaintiffs is a claim based on the negligence of Blitz. Fred's overlooks a key circumstance in *Bragg*: the court of appeals' opinion has nothing to do with the negligence of a retail seller. While the plaintiff in *Bragg* initially sued both the manufacturer of the product and the retail seller, the retailer settled with the plaintiff during trial. 319 S.C. at 534 n.1, 462 S.E.2d at 323 n.1. Thus, the discussion Fred's relies on in *Bragg* is not applicable to a negligence claim—like Hazel's claim—against a retail seller.

Regardless of *Bragg*, Fred's argument is misplaced. Fred's argument depends on the idea that a retail seller of a product owes no duty to its customer. The idea is shocking; a retail seller absolutely owes a duty of due care to its customers. It is a point of law so obvious this Court has hardly ever had an occasion to discuss it. *But see McClure ex rel. Scott v. Fruehauf Corp.*, 302 S.C. 364, 369, 396 S.E.2d 354, 357 (1990) ("In South Carolina, . . . the supplier of a defective product is accountable to an injured party on ordinary negligence principles . . . ." (citing *Carolina Home Builders, Inc. v. Armstrong Furnace Co.*, 259 S.C. 346, 357, 191 S.E.2d 774, 778 (1972)));[11] *Livingston v. Noland Corp.*, 293 S.C. 521, 525, 362 S.E.2d 16, 18 (1987) ("A supplier . . . of a product [is] liable for failing to warn if they know or have reason to know the product is or is likely to be dangerous for its intended use; they have no reason to believe the user will realize the potential danger; and, they fail to exercise reasonable care to inform of its dangerous condition or of the facts which

a products liability policy." We simply make it clear that whether Hazel's claim is a products liability claim is not important to our analysis.

[11] *McClure* "is a products liability case." 302 S.C. at 367, 396 S.E.2d at 355. The plaintiff settled with the product manufacturer—Firestone—and proceeded to trial against the seller and others. 302 S.C. at 367, 396 S.E.2d at 356. The seller—Fruehauf—appealed the adverse jury verdict, contending the plaintiff "failed to establish [Fruehauf] owed him a duty of care because it did not design or manufacture the defective wheel assembly and was merely a seller." 302 S.C. at 369, 396 S.E.2d at 357. We noted, "Evidence indicates Fruehauf knew at the time that such wheel assemblies are dangerous . . . ." 302 S.C. at 367, 396 S.E.2d at 356. We rejected Fruehauf's contention and recognized the seller of a product owes a duty of due care. *McClure* is on point here.

make it likely to be dangerous.");[12] *Guyton v. S.H. Kress & Co.*, 191 S.C. 530, 537-38, 5 S.E.2d 295, 298 (1939) (acknowledging if a retail seller of nail polish had actual knowledge of its inherently dangerous nature, it could be liable for its failure to exercise reasonable care, but affirming a directed verdict for the seller in that case because "there was no proof the [seller] had actual knowledge"). Under this duty, if a retail seller has knowledge a product is dangerous, the sale of the product could be actionable under a theory of *the seller's* negligence if the jury finds the seller did not exercise reasonable care. A claim based on the retail seller's negligence in such an instance is a separate claim from any claim based on negligence by the manufacturer.

Fred's essentially argues the simple fact a product was "defective" under the law of products liability somehow protects a retail seller from liability for its own negligence. In this case, however, Fred's is protected from liability for its own negligence only if the terms of the Confirmation Order and Plan provide that protection. As we have explained, the terms of those documents do not protect Fred's.

### III. Conclusion

We affirm the circuit court's order denying Fred's motion to enjoin the proceedings, and we affirm the court of appeals. We remand to the circuit court for discovery and trial.

**AFFIRMED.**

**BEATTY, C.J., HEARN and JAMES, JJ., concur. KITTREDGE, J., dissenting in a separate opinion.**

---

[12] The plaintiffs argue *Livingston* is a failure to warn case, and this case is not. We are not concerned with this difference. The point for which we cite *Livingston* is that a retail seller owes a duty of due care to its customers, not the manner in which the duty may be breached.

**JUSTICE KITTREDGE:** I respectfully dissent. I would reverse the court of appeals and enjoin these lawsuits pursuant to the order and injunction entered in the bankruptcy proceedings of Blitz U.S.A., Inc. (Blitz).

I commend Justice Few for his thorough majority opinion. I take no issue with his review of the case proceedings and selected quotes from the bankruptcy court's Confirmation Order and Plan (which I will refer to as the Bankruptcy Plan or the Plan). However, in my judgment, the trial court erred in denying Fred's motion to enjoin these claims.

## I.

Jacob, a minor, was injured on November 5, 2010, when his father, James Nix, poured kerosene from an allegedly defective gas can manufactured by Blitz. The kerosene ignited, and Jacob, who was standing nearby, was severely burned. The Blitz gas can was sold in Varnville, South Carolina, by Fred's Stores of Tennessee, Inc. (Fred's).

Because of the number of products liability claims filed in connection with the use of Blitz gas cans, Blitz filed for bankruptcy protection in November 2011 in the United States Bankruptcy Court for the District of Delaware. A trust—the Blitz Personal Injury Trust—was established to handle designated claims from July 31, 2007, through January 28, 2014. Respondents, on behalf of Jacob, filed a claim in the bankruptcy court pursuant to the Blitz Personal Injury Trust.

It is my view that the claims against Fred's in the state court should be enjoined pursuant to the Bankruptcy Plan. I begin with the Plan's definitions of relevant terms. A Blitz Personal Injury Claim is defined to "mean and include all claims for damages or other relief for, based upon, arising out of, relating to, or in any way involving bodily injury [during the relevant time period] and shall include [claims] based upon, arising out of, or in any way involving the products, premises or operations of [Blitz]." Attached to the Bankruptcy Plan is Exhibit 1 entitled "Participating Blitz Personal Injury Claimants." Jacob's claim is included in Exhibit 1; Jacob is therefore a Blitz Personal Injury Claimant.

I turn now to Fred's, and specifically, whether Fred's may invoke the Channeling Injunction of the Bankruptcy Plan. Fred's status as a non-debtor to the bankruptcy proceeding is the real nub of this appeal. The majority correctly cites to the term "Protected Party" in the Plan, which includes "Vendors." A Vendor is defined as "any Entity that . . . sold or distributed any product manufactured . . . by the Debtors." Thus, the Plan envisions its reach to include non-debtor vendors like

Fred's. Fred's is a Protected Party, and the majority so concedes. The Plan unmistakably provides "holders of Blitz Personal Injury [] Claims will be permanently enjoined from seeking satisfaction of their Blitz Personal Injury [] Claims against the Debtors *or any other Protected Party*," including Fred's. (Emphasis added).

To the extent there is any doubt, the Plan additionally confirms "all Blitz Personal Injury [] Claims will be subject to the Channeling Injunction."[13] The majority recognizes the Plan's language concerning the term "Channeling Injunction" provides support for Fred's argument. As set forth in the Plan, "'Channeling Injunction' shall mean an injunction pursuant to Sections 105(a) and 363(f) of the Bankruptcy Code [] to the fullest extent permitted by law." The Channeling Injunction here "permanently enjoins and channels to the Plan Trust all Blitz Personal Injury Claims, and [] permanently enjoins the prosecution of all Blitz Personal Injury Claims against any Released Party." Thus, at this point, the only possible thing that stands in the way of Fred's invoking the Channeling Injunction is whether Fred's is a Released Party.

The Plan defines "Released Parties" to "mean the Debtors, the Participating Insurers, . . . and any other person or entity insured under the Subject Policies, including, but not limited to (i) any distributor or retailer of [the] Debtors' products . . . ." "Subject Policies" is further defined to "mean the policies of insurance listed on Exhibit 2." Blitz had several insurance policies naming Fred's as an insured. Those insurance policies are listed in Exhibit 2 of the Plan. I therefore conclude Fred's is a Released Party.

Given the fact that Fred's is both a Protected Party and a Released Party, the conclusion is inescapable—Fred's is entitled to invoke the Channeling Injunction and enjoin the state court proceedings.

## II.

Respectfully, I do not agree with the majority that perceived inconsistencies in the Plan lead to a contrary result. The majority cautions against a broad reading of the term "Blitz Personal Injury Claim," for someone like James Nix might attempt to seek the protection of the Channeling Injunction. The bankruptcy court, according to the majority, could not possibly have intended to include the claim against Nix. I agree. Nix is not a Vendor and, as such, is not a Protected Party. In addition, Nix

---

[13] As noted above, Jacob's claims are Blitz Personal Injury Claims.

does not meet the criteria for a Released Party. Under no circumstances could someone like Nix invoke the protections of the Plan.

I further part company with the majority in its speculation that the Participating Insurers (that named Fred's as one of their insureds) really provide no coverage for the claims against Fred's. The majority acknowledges that Blitz had multiple insurance policies naming Fred's as an insured, yet because those policies are not included in the record on appeal, the majority concludes "Fred's has not demonstrated it is an insured under a Subject Policy." Juxtaposed to this finding, the majority somehow is able to discern the likely applicability of coverage for Fred's from a non-Subject Policy that is also not included in the record. Specifically, the Burlington Insurance Company policy is a commercial general liability policy that is not a Subject Policy. This commercial general liability policy, the majority says, "would likely cover a negligence claim against Fred's."

Fred's contends that the Old Republic Insurance Company policy, a Subject Policy, provides coverage. Fred's is a named insured under the Old Republic policy. Old Republic is a Participating Insurer that, presumably, paid money into the fund comprising the Blitz Personal Injury Trust. That money was paid by Old Republic on behalf of its insureds (such as Fred's) who were likely to be sued based on their roles in selling the faulty Blitz gas can. Thus, a portion of the funds in the Blitz Personal Injury Trust were paid in part to defend vendor-insureds like Fred's against exactly this type of lawsuit.[14]

However, according to the majority, this Subject Policy cannot be relied on because "the parties call [it] a products liability policy." I do not understand how the presence of a products liability policy weighs against Fred's ability to invoke the Channeling Injunction. The products liability claims against Blitz and vendors of Blitz gas cans were the entire impetus behind Blitz's bankruptcy and the resulting Bankruptcy Plan. The potential for claims against Blitz vendors arising from the sale of the gas can in an alleged defective condition, unreasonably dangerous to the user, was the reason Fred's was listed as an insured in multiple Blitz insurance policies.

Is it really disputed that the claims listed in Exhibit 1, including Respondents' claims on Jacob's behalf, are not products liability claims? Yet the majority

---

[14] The majority makes much ado of the fact that Fred's did not directly pay into the Trust itself. I see no reason to distinguish between Fred's making the payment directly, versus an insurer (i.e., Old Republic, as a Participating Insurer) making the payment on behalf of a named insured.

dismisses the *undeniable* presence of products liability claims because "the phrase 'products liability' is not found in the Confirmation Order or the Plan." As to the majority's position that Blitz's bankruptcy and the Bankruptcy Plan are unrelated to products liability claims, I strongly disagree.

The majority's effort to divorce the presence of products liability claims from the Bankruptcy Plan must not stand. The nature of the regrettable circumstances that led to Jacob's injuries demands that Respondents initial claims on Jacob's behalf, including the remaining negligence claims against Fred's, be characterized as products liability claims. This is true whether the claims are characterized as strict liability, breach of warranty, negligence, or otherwise.

There is no legal path to accept Respondents' position that Jacob's negligence claims against Fred's are somehow unrelated to a products liability claim concerning Blitz's gas cans. As alleged here, the only possible negligence against Fred's is directly linked to a product defect claim against Blitz. I believe the Complaint proves my point. The initial Complaint alleged Fred's was negligent in failing to properly evaluate the fuel container and in failing to properly warn users of the container of the risk of injury. Both of these contentions are based on Respondents' allegation that the "injuries and damages were caused by [the] defective nature of the Blitz container which allows the container to be subject to flash back fires, danger of explosions and/or failing to warn the intended users of the dangers of the containers with volatile substances."

According to Fred's brief to this Court, the Complaint was amended to assert that Jacob's injuries and damages were the result of Fred's "decision to continue to sell an unsafe gas can which allows the container to be subject to flash back fires, danger of explosions and/or failing to warn the intended users of the dangers of the containers with volatile substances." In my view, the amendment does not alter the underlying basis of Respondents' negligence claims. Those claims remain Blitz Personal Injury Claims. Accordingly, I conclude Respondents' negligence claims must be channeled into the Blitz Personal Injury Trust.

Contrary to the majority's suggestion, Fred's makes no argument that a retail seller of a product owes no duty to its customers. The majority pitches nothing more than a strawman argument. Fred's argument, in the context of the pleadings of this case and the Bankruptcy Plan, is a valid one. While a retail seller of a product owes a duty to its customers, the allegations in the pleadings directly link the alleged negligence of Fred's to the claims against Blitz. Yet the majority insists that in this case, the "retail seller's negligence . . . is a separate claim from any claim based on negligence by the manufacturer." Respondents have *not* alleged

negligence against Fred's independent of the alleged defective nature of the Blitz gas container.

## III.

My final response to the majority opinion relates to the notion that the Court must exercise caution in ensuring that the Bankruptcy Plan is not applied too broadly, for the power of a bankruptcy court to enjoin claims against entities that are not debtors of the estate "is not so broad." I agree with the majority in principle, yet I respectfully disagree with the majority's conclusion in this case. First, as discussed above, the Bankruptcy Plan was structured to allow non-debtors to enforce the Channeling Injunction. Fred's comfortably satisfies all the necessary definitional requirements to invoke the Channeling Injunction. The plain language of the Bankruptcy Plan entitles Fred's to enforce the injunction.

Next, the majority references the need for "a nexus to protecting the estate of the bankrupt debtor before the court may enjoin claims against a third-party, non-debtor." I believe Fred's had established that nexus. My reasoning is guided by the approach taken by the United States Court of Appeals for the Fourth Circuit in *A.H. Robins Co. v. Piccinin*, 788 F.2d 994 (4th Cir. 1986). The Fourth Circuit recognized the authority of a bankruptcy court to properly stay proceedings against non-debtors where there are "unusual circumstances." *Id.* at 999. Following a detailed review of the relationship between the debtor and non-debtors, the Fourth Circuit concluded "the record was thus more than adequate to support the district court's grant of injunctive relief" to the non-debtors. *Id.* at 1008.

In analyzing the facts of the case before it, the Fourth Circuit provided an example of a situation that would establish the nexus and "unusual circumstances":

> An illustration of such a situation would be a suit against a third-party who is entitled to absolute indemnity by the debtor on account of any judgment that might result against them in the case. To refuse application of the statutory stay in that case would defeat the very purpose and intent of the statute.

*Id.* at 999.

That is precisely the situation here between the debtor Blitz and the non-debtor Fred's. In 2005, Blitz and Fred's entered into a "Vendors Hold Harmless and Indemnity Agreement." That agreement provided Blitz would "protect, defend, hold harmless and indemnify" Fred's from all claims "arising out of any . . . injury . . . resulting . . . from any actual or alleged defect in [Blitz's]

Products."  The majority summarily dismisses the hold harmless and indemnity agreement on the basis the agreement does not reach Fred's negligence in selling the Blitz gas can.  I do not believe that finding is accurate.  Omitted from the majority opinion is the additional provision in the agreement that calls for indemnification for "any and all claims . . . arising out of . . . the sale of said Products."  Respondents' negligence claims are manifestly covered by the indemnity agreement.  Not only has Fred's clearly met the nexus requirement for a non-debtor, today's decision nullifies the 2005 indemnity agreement.

## IV.

Because I would reverse and order the entry of an injunction against the state court proceedings, I dissent.